**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

JAMES L. GRANT,

                              Plaintiff,

    v.                                    No. 07-CV-745
                                            (LEK/DRH)

SGT. SMALDONE, Macy Correctional Facility; JAMES A. MANCE, Superintendent, Marcy Correctional Facility; B. McAULIFFE, Deputy Supt. of Security, Marcy Correctional Facility; and NEW YORK STATE DEPARTMENT OF CORRECTIONS,

                              Defendants.

---

**APPEARANCES:**                          **OF COUNSEL:**

JAMES L. GRANT
90-A-5811
Plaintiff Pro Se
Marcy Correctional Facility
Post Office Box 3600
Marcy, New York 13403

HON. ANDREW M. CUOMO           CHRISTOPHER W. HALL, ESQ.
New York State Attorney General       Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

    Plaintiff pro se James Grant ("Grant"), an inmate in the custody of the New York State

Department of Correctional Services ("DOCS"), brings this action pursuant to 42 U.S.C. §

---

    [1]This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

1983 and Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., alleging that defendants, DOCS and three of its employees, violated his rights under those statutes. Compl. (Docket No. 1). Presently pending is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. Docket No. 25. Grant opposes the motion. Docket No. 29. For the following reasons, it is recommended that defendants' motion be granted.

## I. Background

The facts are related in the light most favorable to Grant as the non-moving party. See subsection II(A) infra.

During the relevant time in question, Grant, now eighty-one and wheelchair-bound, was incarcerated at Marcy Correctional Facility ("Marcy"), a medium security prison. Compl. II(A), 3; Smaldone Aff. (Docket No. 25-5) ¶ 15; Grant Dep. (Docket No. 25-8) at 6. On January 14, 2007, Grant began experiencing sharp chest pains. Compl. II(D); Grant Dep. at 23. Grant was admitted to the infirmary reporting that had taken two nitroglycerin pills, had a cough, and was wheezing. Antonsen Aff. (Docket No. 25-6 at 1-5) ¶15; Docket No. 25-6 at 7, 10; Grant Dep. at 23-24. Medical staff performed an electrocardiogram (EKG), took Grant's blood pressure, administered oxygen, and called an ambulance to transport him to St. Elizabeth's hospital in Utica. Antonsen Aff. ¶¶ 15-16; Docket No. 25-6 at 10.

Shortly thereafter, the ambulance arrived at Marcy to transport Grant to the hospital. Grant Dep. at 26. Grant was restrained in hand cuffs and leg irons. Smaldone Aff. (Docket No. 25-5) ¶¶ 5-6; Grant Dep. at 27.[2] Security protocol also mandated that a "black box"[3] be

---

[2] At the time in question, defendant Mance was Superintendent of Watertown Correctional Facility. Mance Aff. (Docket No. 25-3) ¶ 6. Mance became Superintendent

applied to the handcuffs to cover the keyhole for all medium security inmates unless a medical condition indicated otherwise. Grant Dep. at 27; Smaldone Aff. ¶¶ 14-16. Grant informed defendant Smaldone, a sergeant, that he had a medical permit allowing Grant to forgo the black box. Grant Dep. at 28. When Grant did not have the permit on his person, Smaldone checked with a nurse to determine if the permit existed. Smaldone Aff. ¶¶ 8, 11-12.[4] No record of a permit was found and with Grant's condition appearing to worsen, Smaldone applied the black box and sent Grant in the ambulance. Id. ¶¶ 12-13, 16.

According to Grant, Smaldone used racial slurs and stated that the black box would be applied to his handcuffs regardless of any permit. Grant Dep. at 29-31. After the restraints were secured, Grant was placed on a stretcher, taken to the ambulance, and escorted to the hospital by a corrections officer and a paramedic. Grant Dep. at 57-59. During the transport to the hospital, the paramedic monitored Grant's blood pressure and vital signs. Id. at 61-63. When Grant lapsed into distress, the paramedic provided him with two more nitroglycerin pills. Id. at 60-62.

A few hours later, the hospital notified Marcy that Grant had been admitted for an "exacerbation of [his] congestive heart failure." Antonsen Aff. ¶ 18; Docket No. 25-6 at 11,

---

at Marcy on April 12, 2007. Id. ¶ 5. Therefore, he was not physically present for the incident in question.

[3] The black box cannot cause physical injury because it "does not tighten handcuffs or other physical restraints . . . ." Smaldone Aff. ¶¶ 17-18. The device, invented by an inmate, "cover[s] the keyhole of the handcuffs to prevent an inmate from trying to pick the cuffs open while being transported outside the facility." Id. ¶ 19.

[4] While defendant McAuliffe was the Deputy Superintendent of Security at Marcy, he was not contacted by Smaldone for advice about, or permission to utilize, the black box. McAuliffe Aff. (Docket No. 25-4) ¶¶ 4, 6-8; Smaldone Aff. (Docket No. 25-5) ¶ 28.

3

15-17. Grant was discharged back to Marcy on January 18, 2007. Docket No. 25-6 at 18. There are no indications in the medical record that Grant had swollen or bruised wrists while he was receiving medical care from either the hospital or Marcy. Antonsen Aff. ¶¶ 11, 21-23, 25-26, 30, 32, 34; Docket No. 25-6 at 12-13, 16-17.[5] Grant has recently undergone x-rays and received medication for chronic pain in his left wrist. Grant Dep. at 42-44. Grant has been advised that he has arthritis in his wrist. Id. at 43-44.

On January 29, 2007, Grant filed a grievance alleging the improper use of the black box in contravention of his medical permit. Docket No. 25-4 at 5-7. Grant asserted that the black box prevented him from reaching his nitroglycerin pills and urine container. Id. at 7; see also Compl. II (explaining necessity of being able to reach the nitroglycerin pills because of inability to communicate during a heart attack and urine container due to frequent and unexpected need to urinate due to other medical problems). The grievance was denied because (1) the black box was properly used during transport as outlined by DOCS directives, (2) Grant's permit was void,[6] and (3) security personnel, and not the inmate, are responsible for maintaining and providing medication to the inmates as needed during transport.[7] Docket No. 25-4 at 9-10. Grant appealed the denial to the Inmate

---

[5] Despite Grant's testimony that he told medical staff about his wrists and that they independently noticed swelling, the only swelling noted was that in his legs and ankles. Antonsen Aff. ¶¶ 24, 31; Docket No. 25-6 at 12-13, 16-17

[6] "[T]he medical permit was void . . . [because it] had been issued prior to any discussion with the Deputy Superintendent of Security as required by Directive 4901 in Part IV . . . ." McAuliffe Aff. ¶ 11.

[7] It is standard security protocol to prohibit an inmate from "carry[ing] medication on his person. Instead, the correctional officer [or medical personnel present in the ambulance] carr[y] the medication and will give it to the inmate as needed." McAuliffe Aff. ¶ 13.

Grievance Program ("IGP"),[8] which "could not reach a majority decision . . . [and] passed [the grievance] . . . to [the Superintendent]." Compl. at 20. The denial of the grievance was affirmed. Id. Grant appealed the decision to Central Office Review Committee ("CORC"). Id. at 22. The Superintendent's decision was affirmed. Id. This action followed.

## II. Discussion

Grant contends that his Eighth Amendment rights were violated when defendants used excessive force in requiring the usage of the black box. Additionally, liberally construing Grant's complaint, he asserts an Eighth Amendment violation for deliberate indifference to his medical needs when defendants failed to comply with his medical permit exempting him from black box restraint. Grant also claims that defendants' actions violated the ADA. Defendants argue that (1) Grant has failed to allege the personal involvement of either Mance or McAuliffe, (2) there is no merit to Grant's excessive force or ADA claims, (3) the Eleventh Amendment bars DOCS from liability in Grant's § 1983 claims, and (4) qualified immunity protects the individual defendants.

### A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to

---

[8] DOCS maintains a grievance program for inmate, known as the Inmate Grievance Program (IGP), through which inmates may seek remedies for mistreatment or misconduct by prison staff. The IGP is a three-step process that requires an inmate to: (1) file a grievance with the IGRC; (2) appeal to the superintendent within four working days of receiving the IGRC's written response, and (3) appeal to the CORC [Central Office Review Committee] ... within four working days of receipt of the superintendent's written response." Abney v. McGinnis, 380 F.3d 663, 668 (2d Cir.2004) (internal citations omitted).

any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as determined by substantive law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment.  Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks summary judgment against a pro se litigant, a court must afford the non-movant special solicitude.  Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006); see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191-92 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se*, ... a court is obliged to construe his pleadings liberally.'" (citations omitted))..  However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.

Anderson, 477 U.S. at 247-48.

**B. Personal Involvement**

Defendants first contend that Grant has failed to establish that Mance or McAuliffe were personally involved in any of the alleged constitutional deprivations.

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)). Thus, supervisory officials may not be held liable merely because they held a position of authority. Id.; Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996). However, supervisory personnel may be considered "personally involved" if:

(1) [T]he defendant participated directly in the alleged constitutional violation;

(2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;

(3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;

(4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or

(5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986)).

### 1. Mance

A position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement. Wright, 21 F.3d at 501. Thus, Mance, the Superintendent of Marcy, cannot be held liable solely because he held supervisory positions over other corrections officers working in the facility. Moreover, Mance was not even acting as Superintendent of Marcy during the time in question. Mance Aff. ¶ 6. Given that, Mance could not nave been directly involved with any of the alleged constitutional violations. Furthermore, there exists no evidence that Mance created an unconstitutional policy or custom or was grossly negligent in supervising since he was not physically located at Marcy. Thus, even construing every fact in the light most favorable to Grant, Mance was not personally involved.

Accordingly, defendants' motion on this ground as to Mance should be granted.

### 2. McAuliffe

Holding a position of authority alone is insufficient to establish personal involvement. Wright, 21 F.3d at 501. Other than McAuliffe's position as Deputy Superintendent of Security, no basis exists for including him as a defendant. The record is undisputed that he was unaware of the events which occurred on January 14, 2007 as he was not working directly with Grant, was not contacted to provide direction or approval during the incident, and was only apprised of its occurrence after the fact. This too is insufficient to establish personal involvement.

Additionally, there is no evidence in the record, nor has Grant asserted, that McAuliffe

was indirectly involved in the decision to utilize the black box.  Moreover, there is no evidence or allegation that McAuliffe created the policies or customs concerning the security standards necessary for transporting prisoners.  There is also no evidence that McAuliffe was grossly negligent in his supervision of corrections officers.

Accordingly, defendants' motion on this ground as to Nunez should be granted.

### C. Eleventh Amendment

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  "[D]espite the limited terms of the Eleventh Amendment, a federal court [cannot] entertain a suit brought by a citizen against his [or her] own State." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98 (1984) (citing Hans v. Louisiana, 134 U.S. 1, 21 (1890)).  Regardless of the nature of the relief sought, in the absence of the State's consent or waiver of immunity, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment.  Halderman, 465 U.S. at 100.  Section 1983 claims do not abrogate the Eleventh Amendment immunity of the states. See Quern v. Jordan, 440 U.S. 332, 340-41 (1979).

"Agencies of the state, such as DOCS, are entitled to assert the state's Eleventh Amendment immunity where, for practical purposes, the agency is the alter ego of the state and the state is the real party in interest." Santiago v. New York State Dep't of Corr. Servs., 945 F.2d 25, 28 n.1 (2d Cir. 1991) (citing Halderman, 465 U.S. at 100).  Thus, Grant's § 1983 claims against DOCS are barred by application of the Eleventh Amendment.

9

Accordingly, it is recommended that defendants' motion on this ground be granted.

### D. Eighth Amendment

#### 1. Medical Care

The Eighth Amendment encompasses the provision of medical care. Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (citations omitted). A prisoner advancing an Eighth Amendment claim for denial of medical care must allege and prove deliberate indifference to a serious medical need. Wilson v. Seiter, 501 U.S. 294, 297 (1991); Hathaway, 37 F.3d at 66. More than negligence is required "but less than conduct undertaken for the very purpose of causing harm." Hathaway, 37 F.3d at 66. The test for a § 1983 claim is twofold. First, the prisoner must show that there was a sufficiently serious medical need. Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998). Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm. Id. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Farmer v. Brennan, 511 U.S. 825, 844 (1994).

#### a. Serious Medical Need

"'Because society does not expect that prisoners will have unqualified access to 'healthcare,' a prisoner must first make [a] threshold showing of serious illness or injury" to state a cognizable claim. Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003)(quoting

10

Hudson v. McMillian, 503 U.S. 1,9 (1992)).  Because there is no distinct litmus test, a serious medical condition is determined by factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain."  Brock v. Wright, 315 F.3d 158, 162-63 (2d Cir. 2003)(citing Chance, 143 F.3d at 702).  The severity of the denial of care should also be judged within the context of the surrounding facts and circumstances of the case.  Smith, 316 F.3d at 185.

It is questionable whether Grant has alleged a sufficiently serious medical need.  Grant claims to have suffered badly bruised and swollen wrists from the application of the black box as well as severe anxiety about whether he will be able to receive his medication in the event he has a heart attack or reach his urine container to avoid embarrassment if the need to urinate arises.  Compl. II.  Additionally, Grant still claims to suffer from chronic pain in his wrists and has been diagnosed with arthritis which he attributes to having to wear the black box.  However, in light of the disposition recommended below, it is unnecessary to determine whether Grant has raised a material question of fact on this record because he has failed to raise such a question with respect to the second prong of this claim.

### b. Deliberate Indifference

Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs."  Chance, 143 F.3d at 702.  Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."  Estelle v. Gamble, 429 U.S.

11

97, 104 (1976). "Mere disagreement over proper treatment does not create a constitutional claim" as long as the treatment was adequate. Id. at 703. Thus, "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists . . . are not adequate grounds for a § 1983 claim." Magee v. Childs, No. 04-CV-1089 (GLS/RFT), 2006 WL 681223, at *4 (N.D.N.Y. Feb. 27, 2006). Furthermore, allegations of negligence or malpractice do not constitute deliberate indifference unless the malpractice involved culpable recklessness. Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).

### i. Medical Care for Wrists

Liberally construing the complaint, it appears that Grant contends that he received inadequate care for his wrists. Grant has failed to allege, nor does the record support, that defendants were deliberately indifferent to providing medical care for his wrists. The medical record is devoid of any subjective complaints of pain from Grant or observations from medical staff of swelling, discoloration, pain, or restricted motion. Antonsen Aff. ¶¶ 11, 21-23, 25-26, 30, 32, 34; Docket No. 25-6 at 12-13, 16-17. There was no indication to the medical staff, either subjectively or objectively, that Grant's wrists were injured. Thus, there is no indication that any defendant delayed or denied treatment, because none was requested or indicated. Moreover, when Grant recently complained of pain in his wrists, defendants obtained x-rays and administered pain medication. Grant Dep. at 42-44. Therefore, defendants provided immediate and appropriate care. On this record, then, there exists no evidence that any defendant acted indifferently to any complaints about injury to Grant's wrists.

**ii. Failure to Comply with Medical Permits**

Liberally construing the complaint, it also appears that Grant contends defendants were deliberately indifferent to his medical needs because they refused to comply with his medical permit excluding the use of black boxes.  However, Smaldone complied with DOCS standard security procedures.  Additionally, when Grant informed him about his medical permit, Smaldone requested to see it and double-checked its existence with the medical department.  Smaldone Aff. ¶¶ 12-13, 16.  No permit was found because, as was later determined, the permit to which Grant referred was invalid.  Docket No. 25-4 at 9-10.  Grant's inability to produce a medical permit, Smaldone's actions in inquiring about the permit, the non-existence of any record of the permit, and the emergency situation with which Smaldone was presented indicate that Smaldone exhausted all reasonable options for investigating the validity of the claimed permit.  Smaldone Aff. ¶¶ 12-13, 16.  Rather than continue the debate over the permit, Smaldone followed the security procedures and immediately caused Grant to be transported to the hospital.  These actions did not delay or deny Grant medical care but, conversely, facilitated its immediate provision.

Thus, defendants' motion on this ground should be granted.

**2. Excessive Force**

The Supreme Court has established that inmates enjoy Eighth Amendment protection against the use of excessive force and may recover damages for its violation under 42 U.S.C. § 1983.  Hudson v. McMillian, 503 U.S. 1, 9-10 (1992).  The Eighth Amendment's prohibition against cruel and unusual punishment precludes the "unnecessary and wanton

infliction of pain." Gregg v. Georgia, 428 U.S. 153, 173 (1976); Sims v. Artuz, 230 F.3d 14, 20 (2d Cir. 2000). To bring a claim of excessive force under the Eighth Amendment, a plaintiff must establish both objective and subjective elements. Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999).

The objective element is "responsive to contemporary standards of decency" and requires a showing that "the injury actually inflicted is sufficiently serious to warrant Eighth Amendment protection." Hudson, 503 U.S. at 9 (internal citations omitted); Blyden, 186 F.3d at 262. However, "the malicious use of force to cause harm constitute[s] [an] Eighth Amendment violation per se" regardless of the seriousness of the injuries. Blyden, 186 F.3d at 263 (citing Hudson, 503 U.S. at 9). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Hudson, 503 U.S. at 9-10 (citations omitted). "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'" Sims, 230 F.3d at 22 (citation omitted).

The subjective element requires a plaintiff to demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." Id. at 21 (citation omitted). The wantonness inquiry "turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Id. (quoting Hudson, 503 U.S. at 7). In determining whether defendants acted in a malicious or wanton manner, the Second Circuit has identified five factors to consider: "the extent of the injury and the mental state of the defendant[;] . . . the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably

14

perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response." Scott v. Coughlin, 344 F.3d 282, 291 (2d Cir. 2003) (internal quotations and citations omitted).

In this case, even assuming Grant has satisfied the objective element that the injury to his wrists was sufficiently serious, he has completely failed to prove the second element of excessive force. Grant testified that the officers did not place the handcuffs in a manner that was aggressive or meant to cause harm, that the handcuffs were not tight when they were applied, and that he was comfortable until the provision of the black box because the box made him extremely nervous. Grant Dep. 34-35, 40; Smaldone Aff. ¶¶ 21-22. Grant's own testimony indicates that neither Smaldone, who ordered Grant to be shackled, nor the corrections officer applying the restraints acted in a malicious or sadistic manner. Grant Dep. 34-35; Smaldone Aff. ¶¶ 21-22. Additionally, Grant indicated that he was well aware that the black box was a mandatory security procedure during transport. Grant Dep. at 27. Even viewing the facts in the light most favorable to Grant, no evidence has been proffered from which a reasonable finder of fact could conclude that any defendant exhibited the culpable intent necessary to sustain the subjective element.

Accordingly, defendants' motion should be granted on this ground as well.

### 3. ADA Claim

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of . . . a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Title II applies to state inmates. Giraldi v. Bd. of Parole, No. 04-CV-877 (FJS/DRH), 2008 WL

907321, at *5 (N.D.N.Y. Mar. 31, 2008) (citations omitted). To state a claim under the ADA, an inmate must demonstrate that "(1) he or she is a 'qualified individual with a disability'; (2) he or she is being excluded from participation in, or being denied the benefits of some service, program, or activity by reason of his or her disability; and (3) [the facility that] provides the service, program or activity is a public entity." Clarkson v. Coughlin, 898 F. Supp. 1019, 1037 (S.D.N.Y. 1995); 42 U.S.C. § 12132.

First, a claim under the ADA cannot be brought against individuals and, therefore, the individual defendants are entitled to judgment on this claim. See Fox v. State University of New York, 497 F. Supp. 2d 446, 451 (E.D.N.Y. 2007); Hallet v. New York State Dep't of Corr. Serv., 109 F. Supp. 2d. 190, 199 (S.D.N.Y. 2000). Second, Grant has proffered no evidence to establish the second element of this claim. While Grant does assert conclusory allegations of verbal threats, these are insufficient to sustain a claim under the ADA. Any discrimination must be motivated by his disability, which here appears to be that Grant was wheelchair-bound. There exists no evidence that any discrimination occurred based on this fact. Third, there is no proof that Grant requested or was denied any benefits by any defendant to which Grant was actually entitled. The medical permit that Grant was allegedly issued was not properly obtained. Additionally, to the extent that the permit constitutes a "benefit" under the ADA, there was an abundance of testimony offered indicating that Grant was provided adequate care from medical staff while complying with DOCS security procedures. Thus, Grant has failed to offer evidence demonstrating any discrimination based on a disability or any resulting loss of any services.

Accordingly, defendants' motion as to the DA claim should be granted on this ground.

**E. Qualified Immunity**

Finally, the individual defendants claim that even if Grant's constitutional claims are substantiated, defendants are nevertheless entitled to qualified immunity. Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003). However, even if the constitutional privileges "are clearly established, a government actor may still be shielded by qualified immunity if it was objectively reasonable for the . . . official to believe that his [or her] acts did not violate those rights." Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990).

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights of which a reasonable person would have known were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230. Here, the second prong of the inquiry need not be reached concerning any of Grant's Eighth Amendment claims because, for the reasons discussed above, Grant has failed to raise a question of fact as to the first prong of the inquiry on those claims.

17

### III.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion for summary judgment (Docket No. 25) be **GRANTED** in all respects and that judgment be entered in favor of all defendants on all claims.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated:  July 28, 2009
        Albany, New York

_David R. Homer_
United States Magistrate Judge